If it pleases the Court, on behalf of Petitioner Gaurish Suring, good morning, Counsel. This Court is compelled to vacate the decision of the Board of Immigration Appeals, as well as the Immigration Judge, on multiple reasons. Primarily, the BIA, the Board of Immigration Appeals, and the Judge did not review or make any findings on the objective facts. The latest religious report that was submitted to the Judge for 2004 states unequivocally that the worst religious violence was directed, in Pakistan that is, against the country's Shiite minority, which continued to be disproportionately the victims of individual and mass killings. On page one of the report, it says the government of Pakistan's response contributed to the atmosphere of impunity to acts of violence and intimidation against religious minorities. The facts are laid out there themselves for granting Petitioner's application for asylum, as well as withholding. So wait a minute, we have to back up. I want to make sure I understand your argument just a bit. So as I recall, Mr. Karedia, is that how you say it? Karedia? Karedia, yes, Your Honor. He missed the one-year bar for applying for asylum, correct? He didn't file within one year. He filed in 2004 after his brother was kidnapped. That is correct. Right. So he missed. He didn't file within one year. And then your argument was changed country conditions. That is correct. Right. And that's what I just read. Right. So your contention is that despite the references to country conditions or to change circumstances by the BIA and by the IJ, that they really didn't consider the true conditions in Pakistan? They didn't resolve or deal with any of these issues. They didn't deal with the issue of mosque after mosque was being blown up, with the Shia people worshiping inside there. This never happened before. The world had changed in 2001. So what do you understand was the basis of their refusal to find changed circumstances?  They used a standard basically, which the judge did and the BIA, saying basically what happened to him before is happening again. The law of this circuit, the law of the BIA is you have to look at it cumulatively. They never did that. They said, well, you know, he was beaten up before, so his brother got kidnapped. We don't see a change. So the BIA did not, neither the IJ nor the BIA addressed asylum, correct? They stated there wasn't a material change condition based on the kidnapping of his brother. They did not look at the country conditions. Right. No, but I mean, so the agency has not yet considered asylum. The agency considered it and denied it. But for a procedural reason. That is correct. All right. It hasn't gotten to the merits of it yet. That is correct. So if we were to agree with you, we would have to remand the asylum claim to the BIA. Is that correct? That is correct. Is that what you're asking for? That is correct. Okay. They had another issue regarding they found him not credible, right? I have no problem with the issue of him mistakenly trying to diffuse the issue of the ransom for his brother. He was inconsistent. That is correct. But does that merit an adverse credibility finding? Based on the full facts, no. It's one factor to consider. It's a weighing. This is a pre-real ID act. It's a totality, again, which they didn't do. They have to view all the facts. You have, again, another witness, a United States citizen who testified truthfully. He basically wanted the court to emphasize that it was his brother's religion that caused the kidnapping. He didn't want to emphasize the issue of the money. He didn't mention the issue of the money, so that was the inconsistency. But the issue before you is the court, the BIA, the immigration judge used the wrong standard. They didn't look at the case law of this court or their own case law. They just said basically it's if you were hurting the past and your brother got kidnapped today, we don't see any change. They did not view it cumulatively. They did not add it together. And as Your Honor was involved in the decision of WACRI, they did no disfavored analysis. I understand this was three years before that, but we requested that. We addressed it. You don't claim any past persecution here, do you? Excuse me? You don't claim past persecution here? No. We've never claimed past persecution. Our whole discussion has been, and that's the WACRI decision that you were on. It was based on withholding for objective country conditions in Indonesia. And it's even worse over here. In Indonesia, the Christians were being, and it was a reverend was being harmed. Over here you have an individual whose brother not only had been kidnapped, but his houses of worship in the city where he lived were being blown up specifically, intentionally by terrorists to drive them out. Would you remind me again, what were the changed circumstances that you were relying upon? The religious report I just read that came out in October of 2004, he filed in December of 2004. His brother was kidnapped in November of 2004. When did he come to this country? He came in 1999 on a false passport. And the mosques started being blown up specifically before there was sectarian violence. When you blow up specific mosques of a specific religious group, they're moving away. We no longer have an issue of sectarian violence of the majority Sunni versus Shias. We now have an intentional ideological fight between Al-Qaeda, the war of terrorism, as well as every single national security group saying this is the most dangerous country in the world and this is the most epicenter and an incubator of world terrorism. That changed all in 2001 and in 2004. To compare it before is like apples and oranges. This is a specific ideology where these individuals, such as my client, were being targeted so that they would be driven out or they would change their religion and join the majority Sunni religion. I'd like to keep the rest of my time. Thank you very much. Okay. All right. Good morning, Your Honors. May it please the Court. Jem Sponzo on behalf of the government. Petitioner enjoyed a full and fair hearing for the agency. He simply failed to credibly establish his claims for relief. As a result, his applications were properly denied. And before this Court, he's not demonstrated the record compels reversal of those determinations, as is his burden. To take first Petitioner's asylum application, the agency's pretermission of that application was correct and this Court lacked jurisdiction to review the denial of asylum because it was based on disputed facts. Well, what their argument is is that the agency didn't really consider the argument that there have been changed conditions in the country. Correct. Right? And that's a due process violation. If the record bore out that condition. So show me in the BIA's decision where the agency addressed his argument that the conditions in Pakistan for Shia had significantly changed or had not changed. Throughout, Your Honor, Petitioner would suggest the agency did not engage in that disfavored group analysis, but that's simply not true. Both the immigration judge and the board considered Petitioner's argument country conditions had somehow changed, that there was a worsening of circumstances, noted the documentary evidence Petitioner submitted in support of his applications for relief, inclusive of that country report he has cited this morning, inclusive of affidavits from various individuals supporting his claim, inclusive of other country reports, I believe, from Human Rights Watch, the World Book Report. All of that was considered by the agency. What's not required is a specific mention of each piece. This Court has never required that the agency write, I believe the phrase is, an exegesis of each element proffered by the alien. Rather, what is demanded of the agency is a reasoned opinion that this Court may review. Do you think that they ought to at least address whether or not there have been changed circumstances or changed conditions in Pakistan? I believe the Court did, Your Honor. Show me. I mean, I've read the BIA's decision many times. And, you know, if you could help me. The board affirms the decision of the immigration judge. So the board is, per usual, a shorter version of analysis in this case. Well, then we can, so you're suggesting that we need to read the BIA's decision together? The two decisions together. This would be a case in which the Court would review first the board's decision and go to the immigration judge's decision to the extent that it is affirmed by the board. The immigration judge. Let me turn, then, to the IJ's decision. And you can. You're looking at the immigration judge's decision? Yes. I believe it's at pages 43 to. October 5, 2005. Correct. At 43 to 56 of the record, Your Honor. Got it. Okay. So tell me, where in the IJ's decision does it address the Petitioner's argument that conditions Pakistan for Shia have changed or not changed? Right at pages 46 to 47, Your Honor. Admittedly, in this case, because. Why don't you hold on to it? Sure, sure. 46 to 47. 46 to 47. Where do you start on 46? All right. To the bottom of that second paragraph. Where does it start with? However, the Respondent's own asylum application included the claim that he himself was targeted prior to his departure. And then continuing on. This is on page 00046. I do not have lines for the decision, but it would be the beginning of the fourth, the first paragraph, or second paragraph, sorry, fourth line from the So perhaps if we can just kind of peel back the pieces that are in play, it might help. There are inconsistencies in his testimony. There is a determination Petitioner did not show changed country conditions, but maybe if we just kind of step through the applications that are in play, it   asylum application is untimely filed for several reasons. First, his failure to show the necessary changed country conditions. Petitioner, particularly before this Court, would argue that, you know, there's a decade plus of dramatically altered circumstances in Pakistan, and that really is not what we are here to discuss today based on this record. There's no dispute Pakistan is a difficult place. There's no dispute it's had a challenging experience since 2001. But Petitioner came to the United States in 1999, first pursued an employment based visa petition in 2002, not asylum, as one might expect if we are to accept the decade he depicts in September 11th, and only after that was no longer in play, ultimately filed an application for asylum in 2004. Petitioner would argue the trigger for that application was the kidnapping of his brother, but that is not credited by the agency. The immigration judge found Petitioner failed to credibly establish that element. Regarding changed country conditions, the agency also noted Petitioner failed to establish that his evidence of country conditions was a continuation of a difficult situation. The last piece, the last piece in denying Petitioner's asylum application was his firm resettlement. So if this Court is not persuaded that it lacks jurisdiction to review the denial of the asylum application as untimely filed based on disputed facts, the alternative is to assess the elements the agency relied upon in finding Petitioner did not show changed country conditions, and see whether the record compels reversal of the agency's determination he did not make that showing. So perhaps that assists. Now, asylum being taken off the table, correct? The asylum application is pressure mitted as untimely filed. The agency then turned to Petitioner's eligibility for withholding of removal. The immigration judge, in fact, granted Petitioner's application for withholding as to India. Again, Petitioner is a native and citizen of India, but denied Petitioner's application for withholding of removal to Pakistan for many of the same reasons that Petitioner was found not to have timely filed his application for asylum, not to have met his burden of overcoming the untimeliness of that filing. Now, Petitioner boldly concedes before this court that he did not suffer past persecution. That was not his assertion before the agency, as evidenced by the fact the immigration judge granted withholding as to Pakistan. Petitioner claimed he and his wife left India because of misfortunes there. But they were then granted refugee status in Pakistan in 91, I believe, remained there for almost a decade. Petitioner's wife and children are there today. And left, Petitioner's contention is that he left Pakistan in 1998 after he and his brother were harassed at their place of employment, at their store. Now, having conceded, boldly conceded he did not suffer past persecution, that 1998 incident that supposedly prompted Petitioner to leave Pakistan is not at issue before this court and is not relevant to the agency's treatment of his applications for relief. Instead, all we're left with as a basis for Petitioner's application for withholding is his contention his brother was kidnapped. That was discredited by the agency. So the first step --" Well, you still haven't. I mean, I read all of that. Okay. I mean, I read your briefs, read the IJ's decision, read the BIA's decision. You're all very familiar with all of that. But my question, though, was where in the IJ's decision does it address, does he address Petitioner's claim that conditions in Pakistan for Shia had changed from the time of his arrival in this country until the time of the hearing? I mean, where the IJ talks a lot about the kidnapping incident and how he doesn't believe that. But the first point was to get over the one-year bar. Correct. And, you know, I asked you earlier at the outset to show me where it's addressed. My best answer, Your Honor, is that question. Okay. That's what I thought. I mean, that's the only point. My apologies if my explanation was unhelpful. I think this is one of those cases where there are very few facts at issue. There's a bold assertion that conditions have changed dramatically and apparently continue to change as Petitioner sets forth the relevant timeline in his opening brief. Well, they're changing today, aren't they? They are, Your Honor. They are, Your Honor. And did you read the New York Times today? I did not today, Your Honor, but I did. What? I did not today, Your Honor, but I did. Well, if you read it today, you'd see that it's a front-page story of how seriously they've deteriorated on this very point in Pakistan because the government is unwilling or unable to stop the violence. And hundreds have been killed. So, I mean, that will be something for the IJ to think about when we remand it. So I'm letting you know that now. You'll be dealing with it then. We unfortunately do not concede that point, Your Honor, and we do not agree. Where this Court has found a disfavored group analysis to support a determination, an individual has met that burden. They've been under very different circumstances. Karachi, I believe the statistic in the record, is that Karachi has a population that is 23 or 24 percent Shia. Petitioner is a practicing Muslim in a predominantly Muslim country. Petitioner has additionally conceded that sectarian violence is no longer the issue. Whether Pakistan is a place we would all want to move or not is simply not what is at issue in this case. It's whether Petitioner met his specific burden to prove whether he should benefit from an exception to the one-year bar relevant to his asylum application or whether he had faced a clear probability, meaning more likely than not, that he would be persecuted on account of a protected ground in Pakistan. He failed to sustain that burden. Additionally, as noted, his wife and children remain presumably with status in Pakistan. That's weighty evidence against finding Petitioner somehow sustains his burden. This Court has long recognized that. If we take his concessions regarding past persecution... Well, we don't know anything about what his wife's situation is in Pakistan, where she's living, where she's located, you know, how she conducts herself. We know she was able to submit an affidavit on his behalf and that she remains. We know Petitioner... There are a lot of people in Pakistan. There are, Your Honor. There are, Your Honor. But squared with the timeline that brought about filing of Petitioner's applications for relief, the agency used language such as dubious. Petitioner asserted he didn't file until 2004 because he was unfamiliar with the asylum process. Well, first and foremost, that's different from filing in 2004 because your brother was supposedly kidnapped, so there is a piece that's at dispute. But to make such a statement when you were previously granted refugee status in Pakistan, when you first pursued an employment-based visa petition, this is not walkery. This is not stale. These are not the facts. And when all that Petitioner has is eligibility for withholding of removal to Pakistan, he simply failed to carry his burden of proving eligibility for such relief. I would note the denial of his application for cap protection is waived and that any assertion of a pattern or practice, theory of relief, as opposed to disfavored group, which would change the burden of proof for withholding, was not exhausted before the agency. So no such argument would be appropriate for this Court. Thank you, Your Honors, for your time. Thank you very much. And the next two matters. I think he has a rebuttal. Oh, okay. I'm sorry. I'll wait. No, no. No, no. Do you have any? I can just add two minutes. Thank you. I was unclear on counsel's argument. I think she may have said my client was granted withholding of Pakistan. He wasn't. The issue of his family being in Pakistan doesn't mean they can practice the Shia religion. Judge Noonan is correct. You can take judicial notice. The mosques are still being blown up. Processions were blown up. Over 500 people were killed in Karachi in the month of November of 2012. Thank you. Thank you.
judges: Pregerson, Noonan, Paez